Please step up and identify yourselves. Good morning, Your Honors. Chris Buckley, Office of the State Appellate Defender for the Appellant Lester Dobbey. My name is Marcy Jacobs. I'm an Assistant State's Attorney representing the people of the State of Illinois. All right, you know our normal procedure. We don't hold you to a specific amount of time, but don't go on forever. May it please the Court, Counsel. This case involves the summary dismissal of Lester Dobbey's post-conviction petition at the first stage of proceedings. Lester Dobbey raises two issues on appeal. I would be glad to answer any questions on the second issue. With this Court's permission, I would like to focus on the first issue regarding the admission of the decedent's statements identifying Lester Dobbey as the shooter in this case. It all comes down to whether it's testimonial, doesn't it? That is the key question here, whether it was testimonial. And I would submit to you that it is at least arguable that it was testimonial. Definition of testimonial is still being developed at this time, but we know a few things. We know a statement can be testimonial when it's accusatory, when it's saying Lester Dobbey shot me. That would be something that would be inclined to incriminate someone. What about a pure, excited utterance in shock to what it just heard? I'm shot, I'm shot, he shot me. That's not exactly what happened here. He did say those words. And then later, sometime, we don't know exactly what his exact words, the witness here, Terrence Robertson, was asked, did he say that Lester Dobbey shot him? He said, yes, I heard him say it at least twice. We don't know exactly how he said that or when he said that. What's the meaning of a solemn statement? Well, solemnity or formality is one thing that is taken into the entire totality of the circumstances. Isn't that the first criteria we're supposed to look at? No, no, Your Honor. If you even look at the most recent U.S. Supreme Court decision on this, Michigan v. Bryant, they just say it's just one of the factors they look at because it could tend to show, if it's not formal, that means it might be a response to an ongoing emergency. But that doesn't necessarily dictate either way whether a statement is testimony or not. If somebody says, oh, expletive, so-and-so shot me, is that a solemn statement? Doesn't sound like that to me, no. But we don't know that's what he said here. The point is that this record has not been developed on this issue of whether this statement was testimony or not. All we have is Terrence Robinson's testimony saying, I heard him say at least twice, Lester Dobbie shot me. We don't know whether it was, oh, my God, Lester Dobbie shot me, or whether it was a response to interrogation, whether who else was present at that time. This record simply isn't developed on this point. And that's because this case occurred before Crawford even adopted this definition of testimonial, before this idea of whether a statement is testimony or not really made it into people's consciousness. So we don't, you know, based on this record that we have, we have Terrence Robinson testifying that, I heard him say this at least twice. We don't even know his exact words. Let me ask you this, Mr. Buckley. Yes, sir. And on this record, even if you were to throw out that statement, given the rest of the record in this case, why does it matter? Well, it matters because there were really three, you know, key pieces of evidence in this case. They had Michael Cole, who identified Lester Dobbie as the shooter. They had Lester Dobbie's statement where he says, yes, you know, I did do the shooting. And then they had this statement from Dorsey Williams, the decedent, saying Lester Dobbie shot me. So if you throw out the decedent's statement, what are you left with on this record? Well, you're left with this testimony of Michael Cole, who is, you know, an acknowledged enemy of Lester Dobbie, who had a rivalry with him, who had, you know... Is Dobbie an enemy of himself? Well, that statement is one that he's disputing. He's saying that that statement was taken... He did a motion to suppress that statement, and he disputes the veracity of that statement. So this becomes a case, then, where you have Michael Cole, the only person identifying Lester Dobbie as the shooter, when he has a clear motive to implicate Lester Dobbie, and then you have this statement that the client disputes and says is not reliable. And you have... They disputed at trial? Well, he said he did file a motion to suppress that statement. He didn't testify at trial. So there was no, you know, defense evidence about that. But he was arguing that this statement is not reliable, because if you look at Michael Cole's testimony versus the statement, there's discrepancies. Michael Cole says that there were two people there. One next to Lester Dobbie while Lester Dobbie shot him. The statement has no mention of that at all. So we're left with... It alters the complexion of the state's case if you do take away Dorsey Williams' seated statement implicating Lester Dobbie as the shooter. And it's at least arguable that the case would be different, and that's really the burden Lester Dobbie has at this point. He just has to show that this is arguable, that it could potentially affect the outcome of the case. Maybe in further proceedings it turns out it won't. But that's not the question we have right now. All we need is enough of an arguable case to advance this to the next stage of post-conviction proceedings. Is that your...you're done? Well, Your Honor, if I could mention one thing on dying declarations, because I think that's another question that's important here. I think it's a reach. Yeah, I'd say you're doubly reaching. No, he's not reaching. No, he's not. It's not a dying declaration. There's no evidence. Well, I will take that under advisement, and I will reserve my further remarks for rebuttal. Counsel, since you didn't do the brief, I didn't catch your first name. Chris. Chris Buckley. Okay. Now, I just, as I say, I looked and I said, he's not on this, so he must have taken it over after. That's correct, Your Honor. Okay. Thank you. Thank you. Good morning, Your Honors. I will address the testimonial versus non-testimonial argument that seems to be at issue with you at this time. And it is not even arguable that this appellate counsel was in any way deficient for failing to raise this issue, where there is no question that at the time that the case came out, at the time that the appellate counsel was, the defendant is charging him with having to have supplemented his brief based on Crawford coming out after the brief was written, the only case that was out there was Crawford, and the only mention in Crawford, which we all know Crawford did not define testimonial, but the only mention in Crawford that it was testimonial, what they did say was testimonial was that it applies at a minimum to prior testimony at a preliminary hearing before a grand jury or at a former trial and to police interrogations. So certainly it is not arguable that this appellate counsel was unreasonable for failing to recognize that this statement to a lay person witness was similar to any of these categories generally outlined by Crawford at that point in time. It certainly was not sworn prior testimony in a preliminary hearing, a grand jury, or a formal trial. It was not a police investigation. But moreover, we now have the benefit of a later decided case that is remarkably on point, and that is the case of Michigan v. Bryant, which shows us that counsel's decision not to bring up this issue, supplement the appellate brief with this issue, was vindicated. The facts were strikingly similar in that case, and the only fact that was different in that case was that that decedent made his statement in response to police questioning, not to a lay person. And certainly here we have just the same exact statement in the same circumstances made to a lay person. The victim there, as here, made his statement while lying on the ground next to a car in his gas station with a gunshot wound to his abdomen minutes after being shot a few blocks away. The victim there, as here, appeared to be in great pain, had trouble breathing, and speaking with difficulty. And as here, this was prior to the victim receiving any emergency medical services. Now, the Bryant court in its analysis determined that in evaluating whether the decedent's statement was testimonial, it must consider whether the primary purpose was to create an out-of-court substitute for trial testimony, or to enable police assistance to meet an ongoing emergency. And that goes largely to the inquiry, and not the motivation of the respondent declaring it. It considered it in three different contexts, and these were its considerations. And the most important one was whether or not it was an ongoing emergency. And it did determine that just because the assault was complete did not mean there was not still an ongoing emergency. And it said that as there, as here, that there was still an armed shooter whose motive and location after the shooting were still unknown, and who had mortally wounded the decedent within a few blocks and within a few minutes of the location where the police found the decedent. There's no basis on this record to even presume that anybody is worried about apprehending, that any part of this conversation is worried about the apprehension of the person. Well, I don't believe that's necessarily so. I mean, if you go on to... The guy with the gunshot wound to the chest, to the guy who later identifies the person because he says he saw him. Well, exactly. Do you think Cole wants to know who did it? No, no. Of course, and that actually, what you're referring to, I think, goes more to the solemnity of the informality of the encounter. And that was yet another circumstance the Bryant court considered. That this questioning occurred in an exposed public area prior to the arrival of emergency medical services in a disorganized, chaotic fashion that certainly it would never have alerted this decedent to or focused him on the possible future prosecutorial use of his statement. And it further also considered the decedent's medical condition at that time, that he was mortally wounded in considerable pain and had difficulty talking and breathing, that he would not have had the primary purpose to establish or prove past events potentially relevant to a criminal prosecution if he had, quote, any purpose at all beyond reflexive responses to questioning. I mean, certainly that is our argument in our brief, that this was just a shocked response with no thought. And we know from People v. Stetschle, the Illinois Supreme Court case, well, the only difference between the Bryant case and People v. Stetschle is the Bryant case, again, is in response to police interrogation. We don't have a Supreme Court case that addresses a statement to a lay person. What about Guerra v. the U.S.? I'm sorry? G-R-A-U-R-E v. the U.S. Maybe it's a 2011 case. It is on point, but whatever. Okay, I'm sorry. I'm not familiar. It would be supportive of your position. Okay. I can go look it up and add anything to this case with that one. We're finished with this argument. But I do believe that the Stetschle case, actually the Bryant case, comports directly with Stetschle. It's Stetschle's test where when you are dealing with a lay person, it is the perspective of a lay person. And you have that two-part test, solemnity, which Bryant completely addressed the solemn situation, which, of course, we don't have here. And the second part of the Stetschle test was, was it intended to establish a particular fact? And, again, Michigan v. Bryant addressed that in these circumstances, no, of course, he wasn't intending to establish. I mean, the bottom line, this was not supposed to be a substitute for trial testimony. That's what Michigan v. Bryant says. Is this a substitute for trial testimony? It's not really limited to that, but I think your threshold point is at the time the appellate counsel was writing this brief, all of these citations you're talking about, except for really Crawford, hadn't been created yet. Correct. So the question is, what was the standard that should be applied to appellate counsel before these other precedents? And, again, I'll go back to what Crawford himself said, because that is the only standard he had to go on at that time. And, again, it only talked about police interrogation, more formal type of proceedings, nothing about lay people. So he would not have been put on notice. But, again, as your Honor had indicated to counsel, appellate counsel was not even arguably deficient for not including this claim, because, again, there would have been no prejudice. Well, the case that is cited in the brief is one of my old cases, and even though it's been overruled, the concurring opinion said that, basically, there are situations where a police officer, just because a police officer is involved, does not make a testimony. Oh, exactly. And in this case, a police officer was not involved. Right. Exactly. But, again, there would have been no prejudice. We don't have the second prong here, because this would have been found to be harmless error, because this one little tiny piece of evidence, that the decedent made the statement, was merely cumulative of eyewitness testimony and the defendant's own confession to the crime. I am prepared to talk about the medical examiner issue, if you want to ask her. Okay. Then, at this time, I would ask you please to affirm. The word supreme in Supreme Court really doesn't mean that. Yeah. I agree. Okay. So the people are simply requesting that you affirm the summary dismissal of defendant's post-conviction petition. Thank you. Thank you. Going on with what I asked of her, what about G-R-A-U-R-E versus the U.S.? Are you familiar with that? I am not, Your Honor. Okay. Well, it's a similar fact situation to this case, and they just take the case she argued of Bryant and take it one step further where police are not involved and say that it's not testimonial. And then the two or three cases that are cited, and I don't hold that to you like T.T., but one, that case has been overruled, but even, as I say, in the concurring opinion of that one, it doesn't support your position because it says a police officer or somebody that's not a police officer may, under certain circumstances, not cross the line to make a testimonial. It depends on the purpose of why the person is there. I agree with that totally, Your Honor. Just because this wasn't a police officer doesn't mean that it can never be testimonial or not. That's just one factor that goes in. It's the primary purpose. That's what Michigan v. Bryant teaches us. And the primary purpose, you were talking about there, is the primary purpose to assist the police addressing an ongoing emergency. So there's no evidence here that these statements were made to police officers, so we don't really know what the primary purpose is. How did we get there, Mr. Buckley, based upon the fact that at the time the appellate counsel was supposedly delivering substandard representation? None of these precedents existed. Crawford did. But Crawford gave, you know, the reason we're struggling with all of this now is that Crawford, as many Supreme Court decisions do, gives you the outline of something without really defining it. And the question is, in the absence of a definition of testimonial, we know what clearly is. Crawford tells us what clearly is. We don't know what isn't. And we don't know what may be. And isn't that the situation that Crawford created? That's exactly the situation. I faced that at that time, and I think a reasonable appellate counsel would have been aggressive in saying if it's not excluded by Crawford, why don't I try to include it, given the vagueness of the definition of testimonial. But T.T. was on the books then. And that doesn't support your position. Well, all of these cases, you know. And it addressed Crawford, and it addressed which would mean that the attorney was not deficient because he looked at that and said, it doesn't help me. It gives me a definition of testimonial and non-testimonial. I don't think any attorney can take any definition given in, you know, any other case except for a U.S. Supreme Court case on the definition of testimonial. So the lower court cases don't count. They count, but they wouldn't necessarily lead you to not raise an issue when the U.S. Supreme Court hasn't excluded the position that you would be arguing for. Do you have a citation for somebody being found to have delivered substandard representation? Not whether an aggressive or excellent appellate lawyer would raise it, but do you have any citation for the situation where someone who relies on an appellate court decision in the absence of a Supreme Court decision was found to have been deficient in the representation? We definitely didn't cite any in the briefs. I can't think of any offhand. The question here, it would depend on the question. If it's as vague as the definition of testimonial, that would be one thing, whereas if it's a separate kind of ruling where the law is more developed, more established, that would be something else. So I think it's at least arguable in this situation that appellate counsel should have raised this issue. And I'd just like to say one brief point on prejudice, because I know that's important to this court. The state says this was cumulative, that Dorsey Williams' statement identifying Lester Dobby as a shooter was not much evidence at all. Well, the state mentioned it in opening argument and mentioned it at least four times in closing argument. So that doesn't sound to me like it's just cumulative evidence. It was an important part of the state's case. If you take it away, the nature of the state's case can change, and there's at least an arguable possibility that Mr. Dobby may not have been convicted. Thank you. If there are no further questions, thank you. Thank you both. As I pointed out to the other panel, you'll know the results before the end of June since it's the end of our quarter. And as to you, unfortunately you had to deal with what was already written, so you did a good job in light of, I'd say, an okay brief.